IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUATISHA PHYLENE MOTT<br>1100 Newportville Rd., Unit 818<br>Croydon, PA 19021 | : : : : | CIVIL ACTION |
| Plaintiff,<br>v. | : : : | CASE NO.: |
| A. DUIE PYLE, INC.<br>650 Westtown Rd.<br>West Chester, PA 19380 | : : : : : | |
| Defendant. | : : | |

## CIVIL ACTION COMPLAINT

Quatisha Phylene Mott (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against A. Duie Pyle, Inc. (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000, *et. seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks

redress for violations under Title VII, Section 1981, and the ADA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within ninety (90) days of receiving a right-to-sue letter from the EEOC.

6. Plaintiff has properly exhausted her administrative remedies regarding her PHRA and PFPO claims by dual filing her Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting her PHRA claims.

**PARTIES**

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is an adult individual, with an address as set forth in the caption.

9. Defendant is a transportation and logistics provider across the Northeast United States, with a location at the above-captioned address.

10. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a Black (African American) female.

13. Plaintiff was hired by Defendant on or about June 13, 2022.

14. At all times during Plaintiff's employment with Defendant, she held the position of Dedicated Dispatcher.

15. Plaintiff's primary supervisor was Defendant's Dedicated Account Manager, Tony Orobono (Caucasian, hereinafter "Orobono"), and her general supervisor was Defendant's Field Operations Manager, Paul Seitz (Caucasian, hereinafter "Seitz").

16. Plaintiff worked at Defendant's Fairless Hills, PA location.

17. Plaintiff was the only Black Dedicated Dispatcher working at Defendant's Fairless Hills, PA locations.

-**Gender and Race Discrimination**-

18. Throughout Plaintiff's employment with Defendant, she was subjected to disparate and discriminatory comments and treatment by Defendant's primarily Caucasian and/or

3

male direct management and employees/drivers because of her gender and/or race. By way of example, but not intended to be an exhaustive list:

    a. Plaintiff's predominately Caucasian management and male employees/drivers treated Plaintiff in a rude and condescending way, often talking down to her;

    b. On at least one occasion, a Caucasian driver, in response to Plaintiff sending him his schedule, sent Plaintiff a picture of a popular meme of a "black crack lady," stating "[a]in't nobody got time for that," followed by a picture of "Buckwheat" – a black character in a children's show, both of which Plaintiff found extremely offensive;

    c. Another male employee, after exploding at Plaintiff for no reason regarding a form he was required to complete, texted Plaintiff later, "I quit, I hope u happy u fucking token bitch" – a clear reference to her race and/or gender;

    d. Plaintiff was routinely called "aggressive" and portrayed as a stereotypical "angry black woman" for simply standing up to her discriminators when she was mistreated and yelled at by male drivers who often refused Plaintiff's dispatch directions;

    e. Plaintiff was routinely criticized for her work for nonsensical and petty issues, while her male and/or Caucasian counterparts routinely failed their audits and were given praises and promoted; and

    f. Black employees of Defendant were routinely given more severe disciplinary actions, such as suspension and termination, while Caucasian employees of Defendant who engaged in the same or even worse infractions were provided with far less serious discipline like verbal counseling or no discipline at all.

19. Plaintiff complained on multiple occasions throughout her employment with Defendant about the unfair treatment she was being subjected to as a result of her gender and/or race.

20. Specifically, Plaintiff informed Orobono that he often made discriminatory comments, to which Orobono, Plaintiff's supervisor, replied "I'm not racist my niece and sister-in-law are 'colored'" to which Plaintiff informed Orobono that the term "colored" was antiquated and offensive.

21. Plaintiff additionally complained to Orobono that Black and Caucasian employees were treated differently with regard to discipline.

22. Plaintiff reported her concerns to Defendant's Human Resources ("HR"), placing emphasis on the disrespect Plaintiff was receiving from drivers as a result of her gender and/or race, but Plaintiff's concerns went unaddressed.

23. However, in or about October of 2023, instead of addressing Plaintiff's concerns regarding discrimination, disparate treatment, and a hostile work environment, Defendant placed Plaintiff on a Performance Improvement Plan ("PIP"). This occurred *just two days* after Plaintiff specifically informed Orobono that a male driver, Deshin Love (hereinafter "Love"), threw his paperwork in Plaintiff's face and refused to listen to Plaintiff's instructions.

24. Plaintiff was placed on the PIP for allegedly failing to hold Love accountable for his actions, as well as purported conflict resolution and communication issues – despite that Plaintiff was the one being treated unfairly and hostilely due to her race and gender – as evidenced by her aforesaid complaints to HR.

25. Upon information and belief, there were no remedial actions taken against Love.

-**Disability Discrimination**-

26. In addition to the discrimination, hostile work environment, disparate treatment, and retaliation that Plaintiff was being subjected to by Defendant because of her race and/or gender, Plaintiff was also treated unfairly as a result of her serious health conditions.

27. Plaintiff has and continues to suffer from ADA-qualifying disabilities, such as anxiety and bi-polar disorder (for which Plaintiff is under a doctor's care and takes medication), and other associated conditions/complications.

28. As a result of Plaintiff's aforementioned health conditions, Plaintiff suffers from panic attacks, mood changes, and difficulty concentrating; which (at times) limits her ability to perform some daily life functions, such as sleeping, concentrating, and working (among other daily life activities).

29. Despite her aforementioned health conditions and limitations, Plaintiff was able to perform her job duties well; however, Plaintiff (at times) needed some reasonable medical accommodations.

30. For example, beginning in or around September of 2023, Plaintiff applied for and was granted intermittent FMLA leave for doctors' appointments and to care for and treat for her aforementioned disabilities.

31. Additionally, in or about February of 2024, Plaintiff discussed with HR the ability to use noise cancelling headphones to assist with outside distractions after a change to Defendant's intercom/call system resulted in several outside calls coming to Plaintiff, which Plaintiff had to spend an inordinate amount of time forwarding. This made it difficult for Plaintiff to focus on her own job duties, in addition to the constant line ringing, which exacerbated Plaintiff's aforesaid health conditions.

32. Plaintiff continued to use the noise cancelling headphones leading up to her unlawful termination (discussed further *infra*).

33. Nonetheless, Defendant's non-black management and HR exhibited clear frustration with Plaintiff's health conditions and requested accommodations, criticizing her need for noise-cancelling headphones as being anti-social and/or not a team player.

-**Retaliation (including termination)**-

34. Thereafter, in or about July of 2024, Plaintiff reiterated her concerns of discrimination to the newly hired HR personnel, Sophia Gonzales (Hispanic, hereinafter "Gonzales"), including Orobono's comment regarding "colored" people, but Plaintiff's concerns were once again not taken seriously.

35. Rather, Gonzales alleged that the disrespect, discrimination, and mistreatment that Plaintiff was receiving was due in part because Plaintiff was allegedly "isolating herself from her teammates in her office with her headphones, making it known that she doesn't want to *integrate* with anyone" – which was a direct reference to Plaintiff's aforesaid much needed ADA accommodation and/or her race.

36. Plaintiff reminded Gonzales that she had disabilities and needed to use her headphones to prevent distractions that exacerbated the same.

37. Gonzales additionally and offensively stated to Plaintiff that she was "aggressive" in her handling of the male drivers, despite Plaintiff's persistent explanation that she was simply standing up to their disparate treatment, as she had been directed to do with Love in her aforesaid PIP.

38. Plaintiff was then abruptly terminated on or about August 14, 2024, for allegedly returning from her lunch break too late on or about August 8, 2024, without informing anyone -

which is untrue. Moreover, Plaintiff had already discussed this incident with Orobono on or about August 9, 2024, at which time she was led to believe that this incident was not an issue.

39. Additionally, Plaintiff had informed everyone in the building that day, including the customer service representative who sat next to her in the office that she was going to have her car looked at, as there seemed to be a problem with the brakes, and there was a big storm coming up.

40. Moreover, Plaintiff was a salaried employee with the highest seniority in the building at the time, who worked far beyond operating hours on a regular basis.

41. Plaintiff was additionally told by Gonzales that Plaintiff's PIP from October of 2023 also played a factor in her termination; however, Plaintiff successfully completed her PIP in February of 2024, and was informed by Orobono that the PIP had "fallen off [her] record" by that time.

42. Most importantly, Plaintiff did not have any history of significant discipline with Defendant until she began to complain about the discrimination and disparate treatment she was being subjected to because of her race, gender, disabilities, and/or her requests for reasonable accommodations.

43. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of (1) her race, (2) her gender; (3) her known and/or perceived disabilities; (4) her record of impairment; (5) her requested accommodations (discussed *supra*); (6) her aforementioned complaints of discrimination, hostile work environment, and retaliation; and (7) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*) by considering/utilizing the same in making the decision to terminate her.

44. Plaintiff also believes and therefore avers that her race, gender, and disabilities were motivating and/or determinative factors in the termination of her employment with Defendant.

## COUNT I
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, pretextual discipline (including placement on a PIP) and a hostile work environment through disparate treatment as outlined *supra* because of her gender.

47. Plaintiff objected to/complained of the aforementioned instances of gender discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

48. Plaintiff was then terminated for completely pretextual reasons on or about August 14, 2024.

49. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her gender and her objections to/complaints of gender discrimination.

50. Plaintiff also believes and therefore avers that her gender was a motivating and/or determinative factor in the termination of her employment from Defendant.

51. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

## COUNT II
## Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Gender Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual filing her claims with the EEOC) and the charge has been pending for at least one year.

54. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count I.

## COUNT III
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, pretextual discipline (including placement on a PIP) and a hostile work environment through disparate treatment as outlined *supra* because of her race.

57. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

58. Plaintiff was then terminated for completely pretextual reasons on or about August 14, 2024.

59. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her race and her objections to/complaints of race discrimination.

60. Plaintiff also believes and therefore avers that her race was a motivating and/or determinative factor in the termination of her employment from Defendant.

61. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

### COUNT IV
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

64. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count III.

### COUNT V
### Violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981")
([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, pretextual discipline (including placement on a PIP) and a hostile work environment through disparate treatment as outlined *supra* because of her race.

67. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

68. Plaintiff was then terminated for completely pretextual reasons on or about August 14, 2024.

69. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her race and her objections to/complaints of race discrimination.

70. Plaintiff also believes and therefore avers that but for her race, she would not have been terminated from her employment with Defendant.

71. These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

**COUNT VI**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**

72. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

74. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

75. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

76. Plaintiff requested reasonable accommodations from Defendant including but not limited to intermittent and/or block time off to care for and treat for her aforesaid disabilities, as well as noise-cancelling headphones for the same.

77. Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

78. Instead of investigating Plaintiff's aforesaid complaints of discrimination and retaliation, Defendant's management ignored them and left her legitimate concerns unresolved.

79. Plaintiff was terminated from her employment with Defendant, on or about August 14, 2024, in close proximity to her requests for/utilization of reasonable accommodations and her expressed complaints of discrimination.

80. Defendant failed to properly accommodate Plaintiff by considering and/or using her serious health conditions and requested accommodations in making the determination to terminate her.

81. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; (4) her expressed concerns of unfair treatment as a result of her disabilities; and (5) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*) by considering/utilizing the same in making the decision to terminate her.

82. Plaintiff also believes and therefore avers that her disabilities were a motivating and/or determinative factor in the termination of her employment with Defendant.

83. These actions as aforesaid constitute violations of the ADA.

## COUNT VII
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)

84. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

86. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count VI.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.  Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.  Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority;

C.  Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.  Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.   Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

F.   Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: November 24, 2025

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Quatisha Phylene Mott | : | CIVIL ACTION |
| v. | : | |
| A. Duie Pyle, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x)

| 11/24/2025 | *[signature]* | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

*RELATED CASE IF ANY:*  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MOTT, QUATISHA PHYLENE

**DEFENDANTS**
A. DUIE PYLE, INC.

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
Other:
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE 11/24/2025    SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE